JASPER & MACLIN v. HOWARD, Trustee, &c.

1· A bequest to a married woman, "to go to the support of herself and children;" also, "I lend to my daughter, C. D., wife of G. D., the land whereon they now live, with all the household and kitchen furniture which they have in possession; also, one negro woman Winney, one negro girl Ailsie, and one negro Langley, with them and their increase, to enable her to support, school, and clothe her children, during her natural life, and after her death, to be equally divided between her children, to them and their heirs forever," does not give the husband such an estate in the property, as can be subjected to sale at law, for the payment of his debts.

Writ of Error to the Circuit Court of Talladega.

A *fieri facias* having issued from the county court of Talladega, at the suit of the plaintiffs in error, against the goods and chattels, &c. of Giles Driver, was levied on a negro woman and child, which were claimed by the defendant, as the trustee of the three children of Celia Driver, and proceedings were instituted to try the right. The cause was submitted to a jury, who returned a verdict for the claimant, and judgment was rendered accordingly. From a bill of exceptions, sealed at the plaintiff's instance, it appears that the will of Luke Howard, which is dated in Hertford county, North Carolina, on the 23d Eay, 1825, was established at the *February term*, 1833, of the court of pleas and quarter sessions for that county. The testator gives, or as he calls it, *lends* to his wife, real and personal property which is specially designated, and after directing how the same shall be disposed of after her death, continues thus, "and also, the part which I have in this instrument hereafter given to Celia Driver, to go to the support of herself and children." "*Item* 3d. I lend to my daughter, Celia Driver, wife of Giles Driver, the land whereon they now live, in Bertie county, with all the household and kitchen furniture which they have in pos-

session ; also, one negro woman, Winney, one negro girl Alsie, and one negro, Langley, with them and their increase, to enable her to support, school and clothe her children during her natural life, and after her death to be equally divided between her children, to them and their heirs forever." It was proved that the slave Alsie, now in question, is the same who is mentioned in the third clause of the will, that the persons at whose instance the claim was interposed are the children of Celia and Giles Driver, and that Celia is now, and was, the wife of Giles Driver when the will was made.

It was also proved, that Giles Driver, his wife and children had been in possession of Alsie for eighteen years, and ever since the removal of Giles Driver from North Carolina to this country ; and that the will was recorded in the office of the clerk of the county court of Talladega.

The court charged the jury, that if they believed the evidence, they should find for the claimant ; and thereupon the plaintiff excepted.

J. T. MORGAN, for the plaintiff in error, insisted, that Celia Driver has a life estate in the property bequeathed to her by her father's will, which may be sold under a *fieri facias* against her husband. If the beneficiaries have interests they may be separated. Fellows, Wadsworth & Co. v. Tann, 9 Ala. Rep. 999, is distinguishable from the present case. There the gift was to a *feme sole,* and the property being placed under her *entire control;* excluded any participation of right on the part of the husband—it also gave to herself and children a *joint estate* even during her life. Here the bequest is to Mrs. Driver alone, for life, of both the legal and equitable title—her children have a mere equity, which they must enforce in a court in chancery ; but the creditors of the husband may seize and sell under execution her interests, which vested in the husband, in virtue of his marital rights. [10 Ala. Rep. 328.]

In the cases cited, the expressed intention of the testator was that the property should go as well to the use of the wife as to the children—that not merely the profits, but the property itself should be devoted to their maintenance. In Copeland v. McAfee, decided at June term, 1845, this court

held, that the clauses of the will now in question, invested Mrs. Driver with a life estate in the property, which might be sold to pay the husband's debts. That case is not reported, but the levy in that now before the court was influenced by it.

Abner Howard is the plaintiff in the judgment rendered on the claim of property, though Andrew Howard is the trustee, as the record indicates; for this cause, if none other, the proceedings are erroneous.

L. E. PARSONS, for the defendant in error, contended, that Fellows, Wadsworth & Co. v. Tann, 9 Ala. Rep. 999, was directly in point, and decisive of the present case. The will gives the mother an immediate life estate, with present interest in her children; and the husband has nothing that can be sold under an execution against him. If there is a mistake in the judgment entry, it does not prejudice the plaintiffs, and they can't complain of it.

COLLIER, C. J.—In Spears v. Walkley, 10 Ala. Rep. 328, certain slaves were given by will to a husband, "to be held and worked by him, for the use of his wife and children, but subject in no way to his debts, contracts or judgments, and at his death to be equally divided among his children, then living, and the issue of such as may be dead, taking together the part that would have fallen to their parent." This court, in considering whether the husband had such an interest in the slaves as could be reached by his creditors, said, " we are clear he has no such interest in the slaves themselves as is the subject of levy and sale under execution;" that his title was created for a special purpose, that is, to work them for the use of his wife and children; and if the slaves could be taken from his possession at the instance of a creditor, the trust, instead of being carried into effect, would be defeated. *Further*, if the profits from their labor constitutes a fund to be divided between the wife and children, then the wife's share, which devolves upon the husband, can only be separated and ascertained in equity.

In Fellows, Wadsworth & Co. v. Tann, 9 Ala. Rep. 999, a father gave to his widowed daughter, " and the heirs of her

body," by deed, a female slave, who he provided should be under her control and employment, in the most profitable way for the use and support of herself, and " her heirs," during their lives; after her death the property was to be divided " among her heirs." In a short time after the gift, the daughter took possession of the slave, who, together with her increase, have for more than twenty years been treated as the separate property of the daughter and her children; though the daughter married very soon after acquiring the possession. It was held, that the deed invested the daughter and her children collectively, with interests which the creditors of the husband could not divest, as it respects the children, through the medium of any *forum*, and as it respects the daughter (his wife) not by levy and sale under execution against his estate; if the husband, in virtue of his marital rights, has an interest in the slave, and her increase, or the profits accruing from their employment, a creditor must proceed in equity to subject it to his judgment. *Further*, that as the daughter became covert, a court of equity may appoint a trustee, in whom the legal title shall be vested, so as to support the purpose of the deed.

The slaves mentioned in the third clause of the will were not vested in Mrs. Driver to be disposed of at pleasure; but during her life she held them in trust to enable her to " support, school and clothe her children." After her death, they were to be distributed equally between the children. In this view of the case, it is difficult to distinguish it from those cited. To assimilate it in principle to the former, it was not necessary that the will should have declared in express terms, that the slaves should be worked for the use of the children, or the mother and children, or that they should not be subject to the husband's debts. In giving them for an object which contemplated that they would be a continual source of profit, the testator must be understood to have directed that they should be profitably employed, and not diverted from the purpose intended, by appropriating them to the payment of the husband's debts. The affirmation of the one intention implies a negative of the other, and is equally potent as if it had been expressed in *totidem verbis*.

Conceding that Mrs. Driver and her children were jointly

interested in the slaves, or the produce of their labor, and still both the cases are in point; for then the mother and children would have interests collectively, which could only be separated, if at all, through the medium of a court of equity. A court of law cannot, under such circumstances, separate the share of a wife from the portion which should be allotted to the children, and devote it to the husband's debts.

If the children did not acquire by the will such an interest in the slaves as would entitle them to maintain an action at law for them, against their mother, it by no means follows, that the father has such a right as may be sold under execution. Mrs. Driver had no rights distinct from her children, and the estate of the latter, as well as the intention of the testator would be materially interfered with, if the slaves were made liable to the husband's debts. The caso of Spears v. Walkley, shows that he may hold property under a trust for the benefit of his wife and children without its being subject to the execution of his creditors.

In respect to the case of Copeland v. McAfee, cited by the plaintiff's counsel, it is true that in one aspect the construction of the will now in question, and the liability of the property bequeathed by the third clause to be levied on to satisfy a judgment against Giles Driver, was presented for decision. But that was a suit in chancery, after a verdict and judgment condemning the property, praying an injunction upon several grounds, and as there was no opinion filed, we are inclined to think that the cause went off upon some objection to the frame of the bill, or its equity. If the question now presented had been considered and adjudicated, it can hardly be doubted but our decision would have been expressed in writing; the more especially as it involved important principles which had not then been decided, and were left open until the cases cited from 9th and 10th Ala. Rep. were determined, one year afterwards.

If the margin of the judgment designates the trustee of the claimants by the name of Abner instead of Andrew Howard, this will be regarded as a clerical misprision, amendable at the costs of the plaintiffs in error; and the amendment is

here made accordingly. This view embraces all the points raised at the argument, and intended to be presented for revision. Our conclusion is, that the judgment must be affirmed.