## McINTOSH et als. vs. WALKER.

1. The undivided interest of a mother in slaves, bequeathed to herself and children jointly,—one third to her during her widowhood, and the other two thirds to her children,—is subject to be sold under execution at law.

Error to the Circuit Court of Montgomery. Tried before the Hon. George Goldthwaite.

This was a trial of the right of property in a slave, levied on under an execution in favor of the defendant in error against Sarah McIntosh, and claimed by the plaintiffs in error through their next friend, Edward H. Grant. The facts appear in the opinion of the court.

F. S. Jackson, for the plaintiffs in error.

Mays, for the defendant.

CHILTON, J.—By the will of Mrs. Elizabeth McIntosh, the slave in controversy, with others, is bequeathed to her son John McIntosh, and her daughter Farella Wright, "to be equally divided between them, and to have the use of them during their natural lives, and at the death of John, living his wife, (who is the defendant in the execution,) she is to have the use of one third part of his part for her support, during her widowhood, the other two thirds to the children of John. If his

widow should again marry, the third allotted her shall vest equally in the children of John." It appears that in this case the son, John McIntosh, died, leaving the present defendant in the execution, Sarah McIntosh, his widow, and four children, who are minors, and on whose behalf E. H. Grant interposes this claim for the slave. It further appears, that the slaves so bequeathed to John have never been divided between his wife and children, but were kept by the defendant in the execution, in whose possession the slave in controversy was at the time of the levy, and with whom also the children lived. This being substantially the evidence, the court charged the jury, that if they believed the slave claimed was formerly the property of the testatrix, Mrs. Elizabeth McIntosh, and was received by John McIntosh under said will, and that the defendant in execution was the widow of said John McIntosh, and his wife at the execution and probate of said will, and that after the death of said John, she was in the possession of said slave, claiming and holding under said will, that they should find the property subject,—to which charge the claimants excepted, and now here assign the same for error.

The counsel for the plaintiffs in error insists that here was a joint interest in the mother and the children, not subject at law to the debts of the mother, and that her creditors can alone separate and subject her undivided third interest by proceeding in a court of equity, and he relies upon the cases of Fellows, Wardsworth & Co. v. Tann et als., 9 Ala. Rep. 999, and Spear, trustee, v. Walkley, 10 Ala. 328, to sustain this view. In the first case, the effort had been made to subject the slave to the payment of the debts of the husband of Mrs. Tann, which slave had been conveyed by deed of gift to her, before her marriage with the defendant Tann, to her and the heirs of her body, to be under her control and employment in the most profitable way, for the use and support of herself and her heirs, during their lives, and after her death, the property to be divided among her heirs. It appeared that the property, for more than twenty years, had been treated as the separate estate of the daughter and her children, she being a widow at the time of her marriage with Tann. It was held, that the deed vested the daughter and her children collectively with an interest, which the creditors of the husband could not divest, as it respects the children, through

the medium of any forum, and as it respects the daughter (the wife) not by levy and sale under execution at law; that if the daughter had an interest in the slave, or in the profits accruing from her employment, which the creditor of the husband sought to condemn to the satisfaction of his judgment, he must proceed in equity. It will readily be perceived that the gift to Mrs. Tann, for the use and support of herself and children, vested an interest in the children conjointly with herself, which would have been defeated, could the slave have been seized and sold out of her possession, under whose entire control it was placed, to carry out the intention of the donor. So also in the case of Spear v. Walkley, *supra*, the slaves were to be held and worked by the husband for the use of his wife and children; this was held to create a personal trust, which could not be defeated by levy and sale. The same doctrine is held in Lavender v. Lee, 14 Ala. Rep. 688–693, where the gift was to the husband in trust for the use, benefit and behoof of himself, his wife, and present and future children. This, it was said, created a personal trust, and although the husband had an interest, still it was to be enjoyed collectively by the family in the personal use of the slaves, or as the deed declared, in " the use, services and labor of the slaves." In that case it was also said that the trust for the benefit of the wife and children would fail, and the intention of the donor be wholly frustrated, if the slaves could be seized and sold for the debts of the trustee. In Hale v. Stone, where the previous decisions are collated, it is stated as the result of them, that where by the terms of the instrument the party, whose interest is sought to be condemned, is to enjoy the property in connection with others, who are also the objects of the donor's bounty, such interest cannot be made subject at law to the payment of such party's debts, if the seizure and sale of the property would defeat the intention of the donor, in respect of the other beneficiaries, or destroy the trust.—14 Ala. Rep. 810 ; see also Rugely & Harrison v. Robeson, 10 Ala. R. 702. In Jasper & Marlin v. Howard, trustee, 12 Ala. 652, the bequest was to the daughter, to enable her to support, school and clothe her children during her natural life, &c., and it was held that this did not create such an estate in the daughter as could be sold under execution against her husband; for it was manifest, if she had been deprived of the slaves, she could not

have carried out the trust for the benefit of the children. All these cases are clearly distinguishable, however, from the case at bar. Here, the will invests the defendant in the execution with an undivided interest of one third in the slaves. It is not to be enjoyed collectively with the children, and is capable of separation, as no intention of the donor in respect to the other beneficiaries will be defeated. The purchaser would only take such estate as Mrs. McIntosh had, and would become a joint proprietor with the children during the widowhood of Mrs. McIntosh.

If this view of the case be correct, then I conceive that the case is analogous in principle to those cases where the interest of one of several joint proprietors of a chattel may be levied upon by execution at law: such, for example, as the levying upon partnership property for the separate debt of one of the partners.—Winston v. Ewing, 1 Ala. Rep. 129, where the authorities are collated; Moore & Co. v. Sample, 3 ib. 319; Story on Partnership, 373, et seq. Upon the same principle, the interest of the mortgagor who is in possession may be sold.—McGregor & Darling v. Hall, 3 S. & P. 397; McGehee v. Carpenter, 4 Por. 469.

As in this case Mrs. McIntosh does not hold the property as trustee, and as the interest of the other joint proprietors will not be affected by the sale of her one third interest in the property during her widowhood, we see no reason why her interest may not be sold under execution at law.

Our conclusion is, there was no error in the charge of the court, and the judgment is consequently affirmed.